MORGAN, LEWIS & BOCKIUS LLP
Barbara J. Miller, Bar No. 167223
barbara.miller@morganlewis.com
Christopher J. Taylor, Bar No. 292369
christopher.taylor@morganlewis.com
Anthony Birong, Bar No. 356613
anthony.birong@morganlewis.com
600 Anton Boulevard
Suite 1800
Costa Mesa, CA  92626-7653
Tel:   +1.714.830.0600
Fax:   +1.714.830.0700

Attorneys for Defendant
BEST BUY STORES, L.P.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE BARBA,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>BEST BUY STORES, L.P., a Virginia Limited Partnership; and DOES 1-50, inclusive,<br><br>　　　　　Defendants. | Case No. **'25CV114  BAS MSB**<br><br>**DEFENDANT'S NOTICE OF REMOVAL**<br><br>[28 U.S.C. §§ 1331, 1332(A), 1441, 1446]<br><br>Complaint Filed:  December 11, 2024 |

NOTICE OF REMOVAL

DB2/ 49886655.1

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND PLAINTIFF'S COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. Sections 1331, 1332(a), 1441, and 1446, Defendant Best Buy Stores, L.P. ("Defendant" or "Best Buy") hereby removes the above-entitled action from the Superior Court of the State of California, County of San Diego to the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1331, 1332(a), 1441, and 1446.

I.  **PROCEDURAL BACKGROUND**

1. On December 11, 2024, Jacqueline Barba ("Plaintiff") filed an unverified putative class action complaint for damages and penalties in the Superior Court of the State of California, County of San Diego, entitled *Jacqueline Barba, individually, and on behalf of all others similarly situated v. Best Buy Stores, L.P.*, a Virginia Limited Partnership; and Does 1 through 50, inclusive, Case No. 24CU027683N ("Complaint" or "Compl.").

2. On December 18, 2024, Plaintiff served the Summons and Complaint on Defendant. A copy of Plaintiff's Complaint is attached as **Exhibit A**, which is a true and correct copy of the Complaint served on Defendant in the Superior Court action. A copy of the Summons and accompanying case initiation and service documents are attached as **Exhibit B**, which is a true and correct copy of the process and orders served upon Defendant in the Superior Court action.[1]

3. In the Complaint, Plaintiff alleges Defendant violated various provisions of the California Labor Code and committed unlawful business practices. In addition to compensatory damages, Plaintiff seeks liquidated damages, civil penalties, restitution, general damages, special damages, incidental damages, pre-judgment and post-judgment interest, injunctive relief, costs,

---

[1] True and correct copies of the Declarations of Jessica Thoreson, Virginia Justice, and Todd Rasset are attached hereto as **Exhibits C, D, and E** respectively.

DB2/ 49886655.1

attorneys' fees, and "for such other and further relief as this Court may deem just and proper." *See generally* Compl. (Prayer for Relief).

4. Plaintiff seeks to represent a putative class consisting of "all current and former employees within the State of California who, at any time from four (4) years prior to the filing of this lawsuit, are or were employed as non-exempt hourly employees by Defendant BEST BUY STORES, L.P." Compl. ¶ 1.

## II. THIS REMOVAL IS TIMELY

5. Plaintiff served Defendant with the Summons and Complaint on December 18, 2024. Because this Notice of Removal is filed within thirty days of service of the Summons and Complaint on Defendant, it is timely under 28 U.S.C. §§ 1446(b) and 1453. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (a defendant's 30-day removal period begins to run when the defendant is formally served with a complaint). No previous Notice of Removal has been filed or made with this Court for the relief sought herein.

## III. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION UNDER CAFA

6. Plaintiff brings this action as a putative class action. Compl. ¶¶ 1 and 10. Removal based on Class Action Fairness Act ("CAFA") diversity jurisdiction is proper pursuant to 28 U.S.C. §§ 1441, 1446, and 1453 because (i) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs; (ii) the aggregate number of putative class members is 100 or greater; and (iii) diversity of citizenship exists between one or more plaintiffs and one or more defendants. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), and 1453. Defendant denies Plaintiff's factual allegations and denies that Plaintiff, or the class Plaintiff purports to represent, is entitled to the relief requested. However, based on Plaintiff's allegations in the Complaint and prayer for relief, all

requirements for jurisdiction under CAFA have been met.[2]  Accordingly, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

### A.   Diversity of Citizenship Exists

7.   To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists; that is, that one putative class member is a citizen of a state different from that of one defendant.  28 U.S.C. § 1332(d)(2); *see also, e.g., United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

8.   An individual is a citizen of the state in which he is domiciled.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).  For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed.  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).  Plaintiff admits that she "resides in California."  Compl. ¶ 4.  The Complaint does not allege any alternate state citizenship.  Therefore, Plaintiff is a citizen of California for diversity jurisdiction purposes.  Thus, at least one putative class member is a citizen of California for diversity jurisdiction purposes.

9.   Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10).  Defendant is a Limited Partnership organized and existing under the laws of the State of Virginia with its headquarters in Richfield, Minnesota.  *See* Thoreson Decl., ¶ 3.

---

[2] Defendant does not concede, and reserves the right to contest at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action. Defendant does not concede that any of Plaintiff's allegations constitute a cause of action against it under applicable California law.

10. The "principal place of business" of an unincorporated association, for purposes of 28 U.S.C. § 1332(d)(10), is the association's "nerve center," or "the place where a[n] [association's] officers direct, control, and coordinate the [association's] activities." *See Hertz v. Friend*, 130 S. Ct. 1181, 1192 (2010). "[I]n practice," the Supreme Court explained, "it should normally be the place where the [association] maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination . . . ." *Id.* A limited partnership's principal place of business is often the office that the public considers to be its main place of business. *Id.* at 1193. The Supreme Court emphasized in *Hertz* that the "nerve center test" should be one of "administrative simplicity." *Id.*

11. Defendant's principal place of business is located at 7601 Penn Avenue South, Richfield, Minnesota 55423. Thoreson Decl., ¶ 3. Defendant's high-level management team is based in Minnesota and directs its business from the Minnesota headquarters. *Id.* The majority of Defendant's executive and administrative functions take place in Minnesota. *Id.* The greater part of Defendant's domestic administrative functions (including payroll, accounting, purchasing, marketing, and information systems) are performed in Minnesota. *Id.* Defendant holds itself out to the public as having its corporate headquarters in Minnesota. *Id.*

12. Thus, Defendant is a citizen of Minnesota for diversity purposes under CAFA. 28 U.S.C. § 1332(d)(10); *see also Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1030 (9th Cir. 2009) (holding that Best Buy is <u>not</u> a citizen of California).

13. Even considering the location of Defendant's general and limited partners for purposes of determining its principal place of business, Defendant is not a citizen of California.

14. Defendant's general and limited partners are BBC Property Co. and BBC Investment Co. Thoreson Decl., ¶ 4. BBC Property Co. is a corporation

1  incorporated in the State of Minnesota with its principal place of business in the
2  state of Minnesota. *Id.* at ¶ 5. BBC Investment Co. is a corporation incorporated in
3  the State of Nevada with its principal place of business in the state of Minnesota.
4  *Id.* at ¶ 6. Accordingly, Defendant's general and limited partners are not citizens of
5  California for purposes of removal.

6  15. Based on Plaintiff's allegations in the Complaint, at least one member
7  of the putative plaintiff class is a citizen of a state different from that of one
8  defendant, as Plaintiff is a citizen of California and Defendant is a citizen of
9  Minnesota. Therefore, diversity jurisdiction exists under CAFA. 28 U.S.C.
10 § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a
11 class of plaintiffs is a citizen of a State different from any Defendant"). Further,
12 Defendant is not a citizen of California, and the local controversy exceptions to
13 CAFA do not apply. *See* 28 U.S.C. § 1332(d)(4)(A)-(B)

**B.      The Putative Class Has More Than 100 Members.**

16. To qualify for removal under CAFA, a lawsuit must be brought on
behalf of at least 100 putative class members. 28 U.S.C. §1332(d)(5). Plaintiff
asserts claims on behalf of a putative class comprised of "all current and former
employees within the State of California who, at any time from four (4) years prior
to the filing of this lawsuit, are or were employed as non-exempt hourly employees
by Defendant BEST BUY STORES, L.P." Compl. ¶ 1. Defendant's business
records show that more than 20,000 non-exempt employees worked for Defendant
in California from October 1, 2022 through December 11, 2024.[3] Declaration of
Virginia Justice ("Justice Decl."), ¶ 2.

**C.      The Amount in Controversy Exceeds $5 Million.**

17. Pursuant to CAFA, the claims of the individual members in a class
action are aggregated to determine if the amount in controversy exceeds $5 million,

---

[3] The actual number of class members is significantly higher given that this figure does not count individuals whose employment ended before October 1, 2022, or those who were hired after December 11, 2024.

exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Where, as here, a plaintiff does not expressly plead a specific amount of damages, a removing party need only show that it is more likely than not that the amount in controversy exceeds $5 million. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). However, the amount in controversy simply represents the potential amount at stake—it does not reflect actual liability. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

18. Defendant's burden to establish the amount in controversy is by a preponderance of the evidence. *Dart Cherokee Basin Operating Company, LLC v. Owens*, 135 S. Ct. 547 (2014). This exercise does not consider a plaintiff's likelihood of successful recovery. *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). "An assertion that the amount in controversy exceeds the jurisdictional threshold is not defeated merely because it is equally possible that damages might be 'less than the requisite . . . amount' . . . ." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 135 S. Ct. at 553. "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 554. "[T]he Court accepts the allegations contained in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim" in assessing the amount in controversy. *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017).

19. To drive out any lingering "antiremoval presumption" in CAFA cases, our Court of Appeals recently "reaffirm[ed] three principles that apply in CAFA removal cases:"

> First, a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the

jurisdictional elements. . . .

Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions . . . .

Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy.

*Arias*, 936 F.3d at 922 (internal citations and quotations omitted). "[I]n assessing the amount in controversy, a removing defendant is permitted to rely on 'a chain of reasoning that includes assumptions.'" *Id*. at 925 (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015)). Such assumptions must be reasonably grounded in the underlying allegations of the complaint. *Id*. "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. Rep. 109-14, at 42 (2005) (citation omitted); *Rhoades v. Progressive Casualty Ins., Co.,* 410 Fed. Appx. 10, 11 (9th Cir. 2010) ("'[O]nce the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is *legally impossible* for the plaintiff to recover that much.'" (quoting *Lewis v. Verizon Commc'ns Inc.,* No. 10-56512, 2010 WL 4645465, *4 (9th Cir. 2010) (emphasis added)).

20. Defendant denies Plaintiff's factual allegations and denies that Plaintiff, or the class Plaintiff seeks to represent, is entitled to recovery. Defendant properly complied with the Labor Code provisions at issue at all relevant times. However, as detailed below, Defendant has established by a preponderance of the evidence that the amount in controversy exceeds $5 million and that this Court has jurisdiction pursuant to CAFA. 28 U.S.C. § 1332(d)(2). Plaintiff's allegations and prayer for relief have "more likely than not" put into controversy an amount that

exceeds the $5 million threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[4]

### 1. Plaintiff's Wage Statement Claim Alone Places in Controversy More than $5,000,000

21. Plaintiff alleges that wage statements issued to non-exempt employees in California are deficient in a number of ways under Labor Code § 226—which provides penalties of $50 for "initial" failures and $100 for all "subsequent" failures to provide the information required by the statute. Labor Code § 226(e)(1). Up to $4,000 in penalties may be collected for each employee. *Id*. The statute of limitations for inaccurate wage statement claims is one year. Cal. Civ. P. § 340(a); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1120 (2007).

22. The Complaint alleges that "Defendants also consistently failed to issue accurate itemized wage statements as required by Labor Code § 226 (a)." Compl. ¶¶ 24, 80. Plaintiff also alleges that "[t]he wage statements given to Class Members failed to accurate account for unpaid wages and overtime because Defendants under-reported Class Members' actual hours worked due to the office the clock work" and that "the wage statements given to Class Members failed to accurately account for premium pay for deficiently provided meal periods and rest breaks." *Id*.

---

[4] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendant's references to specific damage amounts and citation to comparable cases are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendant maintains that each of Plaintiff's claims and theories of liability is without merit and that Defendant is not liable to Plaintiff or any putative class member. Defendant expressly denies that Plaintiff or any putative class member is entitled to recover any of the amounts or penalties sought in the Complaint. In addition, Defendant denies that liability or damages can be established either as to the Plaintiff or on a class-wide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could recover any damages based upon the allegations contained in the Complaint or otherwise. Moreover, nothing in these calculations suggests that the alleged claims can be adjudicated on a class basis when actual facts are considered. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

23. The Complaint further alleges that "[t]hroughout the liability period" and "**upon each payment of wages**" Defendant failed to provide itemized wage statements that accurately showed any of the nine items required by Labor Code Section 226(a). Compl. ¶ 81 (emphasis added). In other words, Plaintiff alleges that each wage statement Defendant issued to putative class members during the statute of limitations period completely failed to comply with each requirement of Labor Code Section 226(a).

24. More than 12,000 non-exempt employees have worked for Defendant in California from December 11, 2023 (one-year before the filing of the Complaint) through January 12, 2025, for a total of more than 200,000 pay periods. Justice Decl. ¶ 4.[5] As explained above, Plaintiff's Complaint alleges that wage statement violations occurred with respect to every pay check and during every pay period. However, even if one assumes wage statement violations only occurred during sixty percent of total pay periods, which is approximately 120,000 pay periods, and even using the lower $50 penalty for each pay period, Plaintiff's fifth cause of action for inaccurate wage statements alone places in controversy at least **$6,000,000** (120,000 pay periods x $50).

### 2. Plaintiff's Sixth Cause of Action For Waiting Time Penalties Puts at Least $9,00,000 in Controversy

25. Plaintiff's sixth cause of action is for "waiting time penalties" under California Labor Code § 203—which specifies that employers who fail to timely pay employees' wages at the time of their discharge or resignation must pay, as a penalty, "the wages of the employee . . . from the due date thereof . . . until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." The statute of limitations for waiting-time penalties claims is three years. *See*, *e.g.*, *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1395, 1398 (2010).

---

[5] This is a significant underestimation, as it excludes individuals who worked in a non-exempt role but whose current or most recent position was classified as exempt.

26. Plaintiff alleges that Defendant "had a consistent policy of failing to pay all wages owed to Class Members at the time of their termination or within seventy-two (72) hours of their resignation, as required by California wage-and-hour laws." Comp. ¶ 25. Plaintiff further alleges that "Class Members were not paid all regular and overtime wages because Defendants failed to pay for all hours worked by requiring off-the-clock work" and that "Defendants failed to pay premium wages owed for unprovided meal periods and rest periods." *Id.* Plaintiff also alleges that "[t]he wages withheld from these Class Members by Defendants remained due and owing for more than thirty (30) days from the date of separation from employment." *Id.* at ¶ 88. Plaintiff further alleges that "Defendants' failure to pay wages, as alleged entitles these Class Members to penalties under Labor Code § 203, which provides that an employee's wages shall continue until paid for up to thirty (30) days from the date they were due." *Id.* at ¶ 90.

27. Plaintiff's sixth cause of action for waiting time penalties is expressly based on Plaintiff's underlying claims that Defendant failed to pay Class Members' wages and failed to provide meal periods and authorize and permit rest breaks. Plaintiff alleges, for example, that "Class Members consistently worked at Defendants' behest without being paid all wages due," and "Defendants' willful actions resulted in the systematic underpayment of Class Members." Compl. ¶¶ 11 and 13. Plaintiff further alleges that "Class members were either not paid by Defendants for all hours worked or were not paid at the appropriate minimum, regular and overtime rates." *Id.* at ¶ 11. Throughout the complaint, Plaintiff alleges these violations were "consistent" or occurred "consistently" or were the result of a "consistent policy or practice." Compl. ¶¶ 11, 16, 17, 22, 24, 25, 44, 59, 67, 73, 92, Plaintiff alleges, for example, that "Defendants had a consistent policy of misstating Class Members' time records and failing to pay Class Members for all hours worked." *Id.* at ¶ 44. Plaintiff also alleges "Defendants had a consistent policy of failing to pay Class Members for hours worked during alleged meal and rest

periods for which Class Members were consistently denied, as also addressed herein." According to Plaintiff, "**<u>Defendants' uniform pattern of unlawful wage and hour practices manifested, without limitation, applicable to the Class as a whole, as a result of implementing a uniform policy and practice that denied accurate compensation to Class Members as to minimum wage page</u>**." *Id.* Based on these allegations, Plaintiff seeks to recover the maximum amount of waiting time penalties for each terminated employee. Compl. ¶¶ 88 and 90.

28. Given the foregoing allegations, it is reasonable to assume that Plaintiff seeks to recover the maximum amount of waiting time penalties for each putative class member. *Chavez,* 2019 WL 1501576, at *4 ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages.").

29. In California, at least 10,000 of Defendant's non-exempt employees' employment ended between October 1, 2022 and December 11, 2024. Justice Decl. ¶ 3. Each of these employees typically worked shifts of at least four hours in length. Declaration of Todd Rasset, ¶ 2. At the time their employment ended, each employee was paid at least $15.00 per hour. Justice Decl., ¶ 3.

30. Thirty days of waiting-time penalties based on a daily rate of $60 ($15.00 x 4 hours) would amount to $1,800 in penalties per employee. Even assuming that only 5,000 terminated employees were to receive waiting time penalties, the claim for waiting-time penalties places in controversy at least **$9,000,000** ($1,800 x 5,000).[6] Only a fraction of this amount is necessary for the waiting-time penalties to alone satisfy CAFA's jurisdictional threshold (wholly aside from Plaintiff's various other claims).

---

[6] The total waiting time penalties would be nearly double if, as Plaintiff alleges, all terminated employees receive waiting time penalties.

### 3. Plaintiff's Request for Attorney's Fees put Additional Amounts in Controversy, Exceeding the CAFA Threshold

31. The above claims put in controversy at least **$15,000,000**. In addition to this amount, Plaintiff also seeks recovery of attorneys' fees. Compl., ¶ 84, Prayer for Relief, ¶ 18. While Defendant denies Plaintiff's claim for attorneys' fees, attorneys' fees are properly included in determining the amount in controversy. As *Arias* makes clear, "*prospective* attorneys' fees *must* be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (emphases added); *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794–95 (9th Cir. 2018) ("The phrases 'all relief' and 'certain classes of damages' encompass *all of the plaintiff's future recovery*, not lost wages alone. Accordingly, *Chavez*'s reasoning *clearly applies to attorneys' fees*.") (emphases added).

32. For purposes of removal, courts in the Ninth Circuit often use a rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("20–30% as the usual range" for attorneys' fees); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund); *see also Arias* 936 F.3d 920, 927 (9th Cir. 2019). "[T]he amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." "Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be *added* to any claim for which attorneys' fees are available" for purposes of assessing the amount in controversy under CAFA. *Herrera v. Carmax Auto Superstores California, LLC*, No. EDCV14776MWFVBKX, 2014 WL 12586254, at *4 (C.D. Cal. June 12, 2014) (emphasis added); *see also, e.g.*, *Molnar v. 1-800-Flowers.com, Inc.*, 2009 WL 481618, *5 (C.D. Cal. Feb. 23, 2009) ("Applying a 25% fee estimate to the $2,931,794.63 compensatory damages figure . . .yields an attorneys' fee award of $732,948.65. Therefore, the Court includes this amount in determining the amount in controversy."); *Tompkins v. Basic Research LLC*, 2008 WL 1808316, *4

(E.D. Cal. Apr. 22, 2008) ("[T]he Ninth Circuit has established that 25% of the common fund is a fair estimate of attorneys' fees. This therefore adds $500,000 to the amount in controversy.") (internal citations omitted).

33. As set forth above, the wage statement penalties alone place in controversy at least **$6,000,000**. An award of attorneys' fees based upon 25 percent of this amount would further increase the amount in controversy by **$1,500,000**, bringing the total to at least **$7,500,000** for the wage statement claims *alone*.

34. Of course, Plaintiff also seeks damages, penalties, attorneys' fees, and other relief for her other claims, including her claims for alleged meal and rest periods violations, unpaid wages, expense reimbursement, and unfair competition under California Business and Professions Code § 17200, *et seq*. *See* Compl. ¶¶ 55, 64, 70, 77, 103, 112-114; Prayer for Relief. All of these claims further increase the amount in controversy beyond CAFA's jurisdictional threshold.

## IV. **VENUE**

35. This action was originally filed in the Superior Court for the County of San Diego. Initial venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V. **NOTICE**

36. Defendant will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

## VI. **CONCLUSION**

37. Removal to this Court is proper under CAFA jurisdiction. If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief and oral argument in support of its position that this case is subject to removal.

//

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

DB2/ 49886655.1

14                                                               NOTICE OF REMOVAL

| | | |
|---|---|---|
| 1 | Dated: January 16, 2025 | MORGAN, LEWIS & BOCKIUS LLP |
| 2 | | By _____ |
| 3 | | Barbara J. Miller |
| | | Christopher J. Taylor |
| 4 | | Attorneys for Defendant |
| | | BEST BUY STORES, L.P. |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
COSTA MESA

15                                    NOTICE OF REMOVAL

DB2/ 49886655.1

# PROOF OF SERVICE

*Barba, Jacqueline v. Best Buy Stores, L.P.*

I am a citizen of the United States and employed in Orange County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 600 Anton Boulevard, Suite 1800, Costa Mesa, CA 92626-7653.

On January 16, 2025, I served a copy of the within documents:

## DEFENDANT'S NOTICE OF REMOVAL

[X] **BY MAIL:** by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Costa Mesa, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.

[X] **BY EMAIL:** the parties listed below were served electronically with the document(s) listed above by e-mailed PDF files on January 16, 2025. The transmission was reported as complete and without error. My electronic notification address is 600 Anton Blvd., Suite 1800, Costa Mesa, CA 92626. My e-mail address is patricia.martin@morganlewis.com.

[ ] **BY E-FILE:** the parties listed below were served electronically using the Court's electronic service provider CM/ECF with the document(s) listed above by e-mailed PDF files on January 16, 2025. The transmission was reported as complete and without error. My electronic notification address is 600 Anton Boulevard, Suite 1800, Costa Mesa, California 92626. My e-mail address is juanita.robles@morganlewis.com

| | |
|---|---|
| **D.LAW INC.**<br>Emil Davtyan, Esq.<br>David Yeremian, Esq.<br>Natalie Haritoonian, Esq.<br>Andrea A. Amaya Silva, Esq.<br>450 N Brand Blvd, Suite 840<br>Glendale, CA 91203<br>Tel: 818.962.6465 / Fax: 818.962.6469 | *Attorneys for Plaintiff JACQUELINE BARBA*<br><br>*Email:*<br>emil@d.law<br>d.yeremian@d.law<br>N.Haritoonian@d.law<br>a.amaya@d.law |

[ X ] **STATE:** I declare under penalty of perjury, under the laws of the State of California, that the above is true and correct.

[ X ] **FEDERAL:** I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.

Executed on January 16, 2025, at Costa Mesa, California.

*/s/ Patricia Martin*
_____
Patricia Martin